May it please the court, Mariah Radin on behalf of petitioner appellant Sharrieff Brown. I'd like to reserve and we'll keep my eye on the clock approximately four minutes. This case came down to whether or not the jury believed prosecution expert Dr. James Reby. Sharrieff Brown maintained that the death of Tracee Younggrace was a tragic accident. Dr. Bonnell, the judge, said that the death of Tracee Younggrace was a tragic accident. The defense expert testified that her injuries could be consistent and were consistent with an accident. Tracee Young's mother testified for the prosecution that Mr. Brown did not have a history of violence, did not hit the kids, did not lose his temper, and that her daughter had a history of banging her head and had injured it in the back just weeks before her death. It was Dr. Reby who testified that this was definitely an intentional act of murder. Had the jury heard powerful impeachment evidence that Dr. Reby had previously testified to definite, sure, and certain conclusions only to later change those, there is a reasonable probability that at least one juror would have harbored a reasonable doubt about an essential fact in this case. But the jury didn't hear that evidence because trial counsel was constitutionally deficient and ineffective and never found it or used it. Well, let's go into that. How much, how defective was it? You know, the standard is, we talk about prejudice, how difficult it is to establish prejudice in a situation like this, and particularly in this context, which is habeas corpus. It has to be grossly improper, grossly deficient. Well, I think the Strickland test, I'm sure the court is all, all of you are well familiar with it. You know, it has to, conduct has to be below the standards of professionalism. That is the standard of, from Strickland. Certainly when you add an AEDPA review and whether it was a reasonable or contrary to, whether it was a reasonable application of Strickland gives another level of deference. But certainly in here, in this situation, I think the trial court said that she doesn't want to get into a can of worms as if, because there's all this that happened before. And it seems that the trial level in that pretrial conference, the, the lawyer for the government actually said, no, there aren't any of these boxes. Right. Which perhaps he should have done more to find the boxes. And then afterwards, cross-examined him based upon the boxes to show that there were distinct differences when he changed his opinions. Okay. But the judge also limited the cross-examination, said, well, we don't want to get in a can of worms, because she was concerned about what the Salazar case had said, which limited the process of finding the boxes. Which limited the potential cross-examination of R.I.B.E. based upon what had happened before. Respectfully, I think I would dispute several of those factors. First, the judge taking that ruling by the judge is misleading and slightly inaccurate, because the judge didn't know what the materials were, because trial counsel didn't know what they were, and because the prosecutor falsely stated they didn't exist. Okay. But we're dealing with grossly inadequate conduct by the defense attorney. And so that set the stage, and I recognize, at least from what I read in the transcript, he wasn't aware of the Salazar decision. This was his first case, or his first murder case, and I know your position is that he should have become aware that those boxes were available in the public defender's office. I think there's two things I'd respond. First of all, Salazar is an opposite. It involved, it is a different set of facts. It did not have any preclusory or broad ruling as to the materiality or the prejudicial impact of these documents. It is a fact-specific inquiry. Salazar said that in the opinion. It depends on the testimony and the evidence in a particular case. And in that case, it was not material. And in that case, Salazar was litigating over a single autopsy report. The court, in a footnote, says it discovered, it looked at other materials. But that case had different facts and involved a single report. And the second thing, Your Honor, is that conference was the night, was the day before trial started. They were discussing bringing, how many jurors to call for a blood year. Is every defense attorney supposed to go on Google and check out the experts? It's not Google, Your Honor. It's his own office's intranet, intra-office system that is specifically designed to alert the defenders to misconduct. I'm aware that that was there. That is undisputed. But I'm not aware that every attorney has the obligation in that office to review that, particularly if the defense or the prosecutor said, hey, we don't have, these records aren't relevant, or we don't have the records. I would agree. It's not a bright line if you didn't do this. You per se have deficient performance. But when you look at the facts of this case, which we must do, he knows that Reby is the star witness. He is the witness who is going to send his client to prison for the rest of his life when his client tells him that this was an accident. You do, in that circumstance, have an obligation to investigate your star witness. I agree with that. But the prosecutor said definitively there are no records. Definitively, to the judge. And then the judge said, I don't want to get in a can of worms here. And that is problematic for many reasons. But, again, that's the night before trial. He spoke to Dr. Reby nine months before that. He did his Google search months before that. He read Salazar according to his own declaration. He's on notice that these documents exist in some way. He requested them from the prosecutor on the record in this college case. So can I ask a question about this? So I think you actually have a very strong argument about deficient performance. But I'm having trouble getting past the timeliness issue because it seems like all the things you just said about what counsel knew, there's the Google search, there's Salazar, there's all this information that there is a problem with Reby. And then in 2012, I think, they learned the boxes are at the prosecutor's office. It seems like there are many stages at which this ineffective assistance of counsel argument could have been made based on all the stuff that was available about Reby that was not used in cross-examination. I don't really understand why it matters that it was at the public defender, that last piece that gets you the timeliness. I'm having trouble understanding. So to back up, you're correct. The triggering fact that we've alleged and that the district court did find to be timely under this theory, found the claim to be timely under this theory, is the discovery that the boxes are in his office. Certainly, prior to that, there are factors that would indicate he was deficient. We would know that he did this search and found nothing. He should have been on notice from Salazar. But at that point in time, it's not clear that these boxes exist or what these materials are. But 2012, it's clear because the habeas counsel copies them at the prosecutor's office. That's correct. And I think what gives you the actual deficient performance, what takes it beyond just, oh, he should have done a little bit more and he was on notice, is that they were in his own office. He had to take a single step, talk to his supervisor, or put this in the intranet. And I think the case law, and we litigated this. Even if they weren't in his office, I mean, his supervisor probably would have known, even if they were only at the prosecutor's office, because this is like a famous problem. This is what's so mind-boggling about this. I mean, it seems, I mean, that's what also makes it very bad performance by the lawyer, I think. But because it's so available, I mean, I actually think it may be an obligation to Google the expert who's the key expert. And if he had, I mean, he says he did, but if he had, really, he would have seen all this stuff. So then it's like, well, why does it matter that the boxes are in one location or the other? It's like they're all over the world. I mean, they're all over the, you know, Internet world. They're all over. The information is available in a lot of places. Well, the notice, certainly putting him on notice is available in a lot of places. But actually having it in your own office is significant. And I think the case law does support this. And again, we did litigate this. And so a lot of this argument and case citations are spelled out more fully. Well, the real difference is the existence of the boxes or the possession of the boxes on the issue of timeliness, correct? So you have to take the position that the real issue is that the defense office had the existence of the boxes. That's what you're looking for, right? And that that was discovered later. That's correct. That's the date we use as our triggering date. Well, it's the existence they knew in 2012. That they were in, that habeas counsel did not know until 2014 that the boxes were at the public defender's office. I'm sorry. But the existence, I mean, maybe I misunderstood Judge Sliver's question, but the existence was known in 2012 when they were found and copied at the prosecutor's office. The location of them at the public defender wasn't learned until 2014. And I think the case law, again, is clear that you can't, yes, we could complain about his performance up until then. And there were complaints about various aspects of trial counsel's performance and what he should have done. But the actual, a claim is not ripe until you have the deficient performance and the prejudice. And I The standard is discovered by due diligence. So that's really the question. The fact that there were the records or they were possessed by the prosecutor's office occurred much earlier. And you made a very good point. I think we all agree that those records should have been used and maybe more in a substantial way by the defense attorney. But the existence of those records in the public defender's office wasn't discovered until much later. But the possession or the existence, at least with respect to their having been around a long time, he could have found out about them. That was well known. So why isn't that the date from which you establish whether or not it's timely? We used the date in 2014 because that's when it's our position that an actual successful and not frivolous claim for both deficient performance and prejudice was fully developed. This is in the further excerpts of record at 226 through 28. I'd also note that this is a clear error review on this disputed facts about when things were known or should have been known or how diligent people were as to the timeliness. This was litigated in a motion for leave to amend. It was litigated in the traverse. It was litigated in the objections to the R&R. The MJ repeatedly, pardon me, the magistrate judge repeatedly found it timely and the district court adopted that timeliness finding. So for under a clear error review, I don't believe there is any clear error. This January 2014 date under the law. And I'm sorry, I'm a little bit confused. Don't we review the timeliness de novo? I believe disputed facts should be reviewed for clarity. But I don't think there are disputed facts like we know that it was found at the prosecutor's office in 2012. It was found at the public defender in 2014. I don't really think there are disputed facts. I think respondent has disputed many facts that we've asserted regarding when things were known and who knew them and if petitioner knew it back in 2012 or 10 when his petition was filed. But even if we take your version that you knew the prosecutor in 2012, you didn't know about the public defender until 2014, isn't it a question of law that we do de novo whether it's timely? I think the court has an independent responsibility to find if a petition is timely. I think it's just what the review would be. And that's whether or not it could have been discovered, right? Whether or not it was. It could have been discovered through due diligence. Yes. In 2012. That's the issue. Well, I, okay, well, due diligence I think is a slightly different issue and I think to fault habeas counsel for not finding something that they have lied about the lack of existence of. That's relevant to the timeliness. That's the timeliness issue. Well, that is one way of framing it and I'm happy to address it as such for timeliness and diligence. I think habeas counsel asked trial counsel, did you have them? She spoke to the DA's office. Can I have these? There was no one who alerted her to the fact that they were in the public defender's office and she'd repeatedly been asking for, trial counsel had asked for them and she had now asked for them. No one alerted her to this. This is reasonable diligence. She copied them. She was there. She spoke to people. I don't think there's a question of her diligence. I'd like to reserve the remainder of my time. Thank you, counsel. Good morning and may it please the Court. Deputy Attorney General Sharon Markovich on behalf of the warden. I'd like to start with timeliness. The ineffective assistance of counsel claim in this case is untimely. The district court afforded petitioner an alternate trigger date. That was incorrect. A petitioner is not entitled to an alternate trigger date in this case because when he filed his original petition, he actually alleged an ineffective assistance of counsel claim for failing to discover the rebate boxes and use them to cross-examine Dr. Reby. That was in 2012. The alternate trigger date awarded by the district court was in 2014. Because petitioner actually raised an ineffective assistance of counsel claim based on the rebate box material, his new ineffective assistance of counsel claim is untimely. In addition, the district court found if he wasn't entitled to an alternate trigger date, that the new ineffective assistance of counsel claim would relate back. That analysis was also incorrect. The magistrate judge relied on unexhausted claims in evaluating relation back. And under this Court's precedent, you cannot relate back to an unexhausted claim. Was there even an earlier claim that focused on the location of the boxes? Because I think I could only find a claim that was more just about the existence of Reby having contradicted himself. Yes, that's true. The original ineffective assistance of counsel claim did not discuss where the boxes were located. But the point is, is that from where trial counsel could have obtained the collateral impeachment information is not a predicate fact to asserting his ineffective assistance of counsel claim. And that's evidenced by the fact he actually made the claim in 2012. So it wasn't a predicate fact that he needed in order to later assert the claim, which would then entitle him to an alternate trigger date. I would like to go to the merits of the ineffective assistance of counsel claim. And I think that it's clear here the California Supreme Court could have reasonably rejected this claim, finding that Petitioner failed to demonstrate prejudice. Even assuming that trial counsel had all of the materials and used it during cross-examination, there's simply no reasonable probability of a different outcome in this case. And that's why. Why don't you give me everything that's undisputed. Undisputed. So I think foremost it would be the severity of Treseon's injuries were just incompatible with Petitioner's defense that she fell off a counter. But the other expert disagreed about that. So if they didn't believe Reby, that doesn't seem clear. Well, excuse me, Dr. Bunnell had to base his opinion of an accidental fall on hypothetical facts that were not supported by the evidence. Specifically, he had to add at least one full foot to Treseon's fall. But I think he said maybe the toddler stands up and that's where you get the foot. That doesn't seem crazy, does it? Well, there was nothing in the record that supported that she was standing. In fact, Petitioner's — Well, no one knew that was the problem because no one was there, right? Right. But Petitioner said that he left her sitting on the counter when he went to go check on the other baby. And so there was nothing — there was nothing supporting that she was standing. And, of course, Dr. Bunnell also rendered his original opinion based on a four-foot counter, and the counter in this case was three-foot. And also he said that the injuries could have only occurred by falling off this counter if she was standing and then fell — essentially swan-dived and fell on the top of her head. Wasn't he also — I don't remember it exactly. I think he was cross-examined based upon former bad conduct that he had engaged in. He was. Dr. Bunnell was. And, of course, Dr. Bunnell also essentially didn't dispute the prosecution's theory of an intentionally inflicted injury. He agreed that Traceon's injuries were consistent with her head being hit against a hard object. He said normal headbanging would not cause those injuries. He could not say to a medical certainty whether her injuries were caused by the fall. And the two studies that he relied on to support his accidental fall theory, they didn't even support his opinion, because when asked if Traceon's injuries matched that of the non-accidental trauma rather than the accidental trauma, he said, yes, it more likely follows that theory. Moreover, the studies that he relied on, which evaluated children falling under four feet, which is exactly what occurred here, not one of the children in those studies needed surgical intervention. Traceon needed surgical intervention in this case. All of the injuries in the study were linear fractures. Traceon suffered a depressible fracture. And not one of the children in the studies suffered — Was he cross-examined on these studies that you're saying? He was. But it seems like even despite that, it seems like his basic point was we can't really tell. I mean, you're right that he didn't say it's definitely an accident, but he says we can't really tell. So the only expert who said we definitely can tell is Revy, right? Yes, that's true. But, of course, there was other evidence that supported that Petitioner was guilty of murder. It was undisputed that he was alone with Traceon when she suffered the injuries. The condition of the apartment supported that they were intentionally inflicted. There was an issue with his story about making a sandwich, and the sandwich, when the police arrived, was not in the kitchen. It was in the room with the missing TV. Can you help me with something?  Could you explain that to me, what ruling the trial court made that would have made this not admissible or not usable in cross of Dr. Revy? Yes, the trial court did make a California Evidence Code 352 ruling. The state trial court did? Yes, the state trial court said that although trial counsel was allowed to ask Dr. Revy about his changes of opinions in these other cases and the reasons therefore, he was not to get into case-specific facts. And trial counsel didn't do so. And that was based upon the trial judge's determination as to what she read in the Salazar case, correct? And she didn't want to get into, really, problems with this. I think that the decision was based more on, I don't want to get off course on the facts of this trial, which is what the jury should be focusing on. I don't want to start going down into the details of the Lance Helms murder, which was at issue in the Salazar case. And, you know, create a little mini-trial about what happened in that case. Well, it was unclear to me, it seems to be suggested that the trial court knew about the Revy boxes and didn't want to get into that sort of thing so that it wouldn't have made any difference if counsel had known about it. I think that everyone knew about the Revy boxes. This is something that has been going on basically since the 90s. The Salazar opinion was issued in 2005, which is five years before our trial. There is a footnote in the Salazar opinion talking about the Revy boxes. There were two Salazar's opinions. The one earlier one was the real problem. But then the one afterwards, where they somewhat reversed themselves, then that seemed to be the case where there was some argument that this type of evidence could not be used for cross, at least in a limited sense that it had to be really relevant to the particular case. And that seems to be what the trial judge was getting into, right? I don't know that. So, yes, you're correct that there was a California Court of Appeals Salazar opinion and then a subsequent California Supreme Court Salazar opinion. Salazar stood for the proposition it was a Brady claim. All they said was that the Revy box material wasn't material in the Brady sense. And that is at the point at which the LADA's office stopped having the Revy boxes in their office. They took him out of the Brady alert system. But the Salazar 2 decision that said that was based on the facts of that case and why the court thought they were strong enough that this wouldn't have made a difference. So it's hard to see how that means it wouldn't make a difference in any case. Oh, I agree that the Brady inquiry is a fact-driven inquiry. And that is severed from the 352 ruling in the Superior Court in this case, which basically said that the undue consumption of time or going off into tangential information wouldn't be worth it in this case. And that's a California Evidence Code section. But there was no fulsome motion from the defense counsel to explain why this material would have been relevant and why this case, it really mattered. That's true. He did present that he didn't want to get into case-specific material and unfortunately he didn't explain why in his declaration. I would submit that the reason, one of the underlying reasons is that there has been a case where Dr. Riebe was extensively cross-examined on this Riebe box material and it didn't make a difference. I would also submit that as shown in Riebe's declaration where he explained each and every one of his modifications of opinion from the Riebe box cases, it just shows that he's a competent and thorough pathologist, which would have bolstered his credibility in the eyes of the jury. And in this particular case, it would... Well, it seems like that is debatable. Because at least some people in the prosecutor's office saw that differently. The prosecutors, some of the prosecutors themselves thought we can't even use this person anymore. I mean, so there was clearly a mix of opinions, which means if you present the evidence, the jury could have had a mix of opinions too, right? I don't believe so. I think that the district attorney memos were based primarily on an opinion of one of the prosecutors in one of the cases in which Dr. Riebe... Basically, his opinion took away a special circumstance and I think the prosecutor was upset by that. I think that Dr. Riebe's explanations of his modifications of opinion in those other cases shows that when he gets new information, that he is willing to look at the evidence and if he thinks that it could show something other than what he originally concluded, he's willing to look at that. But when asked in our case if he looked at additional material and he affirmatively said yes, he looked at the entirety of Tracy on some medical records after he issued his original conclusion, he said his opinion wouldn't have changed in our case. Well, let me ask you this, though. The opposing counsel has done a good job in their reply brief of showing or trying to show what a competent attorney, an effective attorney could have done with all of that evidence had that attorney had that available that was at the public defender's office. The hypothetical cross-examination contained in the reply brief, first of all, is purely argument. There's no way a prosecutor wouldn't have objected. Well, it certainly is relevant to the issue of prejudice. The idea that there could have been cross-examination about the case-specific materials, yes, it would be relevant to prejudice. However, there was no proffer of what Dr. Riebe's answers would have been and I would submit that all of his answers would have been consistent with his declaration that is contained in our record explaining each of his modifications. And not only that, but some of the basis of those questions isn't supported by the record. So, for example, in one of the cases in the hypothetical cross-examination in the reply brief, there was a suggestion that Dr. Riebe didn't suggest consultation with a sexual assault expert in one of the cases and that's just simply untrue. We respectfully request that the district court's judgment be affirmed. Going back to timeliness for one second, I would like to add just an additional point and this is directly from the further excerpts of record at 226 and the district court litigation on timeliness. But it also goes to what Judge Silver had said earlier that prior to learning that the boxes were at the public defender's office, the state of the case at that point would have been that trial counsel learned from the district attorney's office that these boxes did not exist and relied on that as he said he did in his declaration. And a claim for ineffective assistance of counsel would not lie where trial counsel relied on the prosecutor's statement that something does not exist. He failed to discover something that he was told did not exist. Whatever clues he had, that would not trigger a strong or ineffective assistance of counsel claim on the deficient performance prong. So that is why the discovery of the boxes in the office is a significant fact that does give or a predicate fact that does make that claim timely. It seemed to me you went through those boxes in reply and said what could have been done by the attorney, right? Certainly. And I don't think that all of those questions are mere argument. They're actually taken all from Dr. Reby's transcripts and testimony and other cases. Okay. But counsel has just said that she would have a response. She wasn't given the opportunity to respond to your hypothetical cross-examination. And she said had she been able to, and of course you'd have to be able to establish it in the record, that Dr. Reby, I'm now pronouncing it correctly, Dr. Reby would have had a response to it. And I think that's an argument that's made repeatedly throughout the briefs that Dr. Reby could explain. But it is not that there lacks an explanation. It's the simple fact that he can testify to one thing and be sure of it and then testify to something else. That's relevant information for a jury when they're weighing his opinion. But that really relates to prejudice, right? We're talking about prejudice. What about the other evidence that was offered in trial that supported the verdict, such as the TV wasn't there, there was a steamer that was brought in, he didn't call 911, he called his mom. Isn't that relevant to the issue of prejudice? I think the TV, the prosecutor admitted that she just came up with this theory because she thought it was weird that the TV wasn't there. No expert, nobody said that the head had been hit on a TV. Those were distractions. There was no dispute that he was alone with her. It was a question of whether this was an accident or it was intentional. He explained why he didn't call 911, and that's because he can't read and he was afraid he couldn't direct them to the house. So he waited until his mother could make the call. Perhaps no one likes that answer, but it is an explanation and she did call 911. I think going to prejudice and what would have actually occurred, it's very important to look at what did occur. And the trial court allowed the prosecutor to go into dismissed allegations against Dr. Bonnell and to extensively cross-examine him about his credibility, because that is what California state law allows. There is broad leeway to discredit an expert witness's opinion, even based on facts, not in evidence. And I will just say the name of the case and be done. It would be People v. Wilson, which is 36-Cal-4-309. That's cited in our case. Cross-examination of an expert witness is broad and it's allowed. Thank you. Both sides gave very helpful arguments. Thank you so much. And the case is submitted and we are adjourned for the day. All right.
judges: Schroeder, Friedland, Silver